NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220080-U

NO. 4-22-0080

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| RIVER WILLIAMS, | ) | No. 19CF270 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court did not abuse its discretion in
sentencing defendant to two concurrent terms of 10 years' imprisonment.

¶ 2         Defendant, River Williams, an inmate at Pontiac Correctional Center (Pontiac), was
convicted of aggravated assaults on two corrections officers—one conviction for each officer. The
court sentenced defendant to two concurrent terms consisting of 10 years' imprisonment and 18
months' mandatory supervised release.

¶ 3         On appeal, defendant argues the court abused its discretion by imposing excessive
sentences; he claims the court failed to give any weight to the mitigating factor that he "was
suffering from a serious mental illness which, though insufficient to establish the defense of
insanity, substantially affected his *** ability to understand the nature of his *** acts or to conform

his *** conduct to the requirements of the law" (730 ILCS 5/5-5-3.1(a)(16) (West 2018)). We affirm.

¶ 4                                   I. BACKGROUND

¶ 5         On March 25, 2019, Jonathon Harrold and Eric Tkach, both corrections officers at Pontiac, reported to the cellhouse command staff defendant had thrown a liquid at them from his cell. A grand jury thereafter indicted defendant on two counts of aggravated assault of a correctional officer (insulting or provoking contact) (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)), with one count for each officer.

¶ 6         At defendant's jury trial, Harrold and Tkach each testified they had been on a "gallery walk" of defendant's maximum security cell block. Defendant stopped the officers to ask them whether he would be going to the yard that day. They told him he would not. Defendant then used a milk carton to throw a liquid smelling of urine at the officers, splattering both officers' uniforms below the beltline. The jury found defendant guilty on both counts.

¶ 7         At defendant's sentencing hearing in November 2021, neither party presented further evidence. Both agreed defendant was subject to mandatory Class X sentencing because of his prior convictions. See 730 ILCS 5/5-4.5-95(b) (West 2018). The State asked the court to impose a sentence of 12 years' imprisonment for each conviction, arguing, *inter alia*, defendant's 74 infractions while imprisoned, and his prior criminal history, including crimes of violence, demonstrated he was too dangerous to receive a minimum sentence. Defense counsel contended defendant's ability to control his emotions had improved as he received medications and mental health treatment. Counsel also asked the court to note defendant's improved demeanor. Counsel therefore asked the court to impose the Class X minimum sentence of six years' imprisonment (see 730 ILCS 5/5-4.5-25(a) (West 2018)).

¶ 8        Defendant made a statement in allocution, telling the court he had "completed the mental health program, the RTU/BMU," had had no major rules violations since April 2020, and had been allowed to enter the general prison population. He asked the court for a chance to "prove that [his] meds [were] working."

¶ 9        The court concluded a minimum sentence would be inappropriate based on defendant's record of infractions and the need to deter defendant from similar behavior. It reasoned:

> "The aggravating factors as argued by the State include deterrence, which here I think is a particularly strong factor. *** [B]asic human decency rules would suggest that this is highly inappropriate behavior.
>
> Now, maybe you've recognized that; and maybe you have made some changes. You seem to be working in that direction at least as far as the presentence investigation report goes ***. But the reality is, you have a terrible record in the Department of Corrections; and you're going to have to demonstrate for an extended period of time I think that you have made the changes that you say that you have made.
>
> *** Now I'm prepared to accept your word that you haven't received any infractions since April of 2020. I hope that's the case, and I hope that you are making progress in your mental health and in working. You do obviously have quite a long time to go, but you are also going to have to accept responsibility and be held accountable for the actions that you did take while you were in the Department of Corrections."

The court therefore concluded concurrent sentences of 10 years' imprisonment were appropriate.

¶ 10    Defendant moved for reconsideration of his sentence, arguing the court should have given more weight to his improvement in behavior. He suggested a primary reason for his improvement was that he had sought out "[mental health] services in the Department of Corrections."

¶ 11    The court denied defendant's motion, and this appeal followed.

¶ 12                                II. ANALYSIS

¶ 13    Defendant argues the court abused its discretion when it failed to consider the statutory mitigating factor of a "serious mental illness which, though insufficient to establish the defense of insanity, substantially affected [defendant's] ability to understand the nature of his *** acts or to conform his *** conduct to the requirements of the law" (730 ILCS 5/5-5-3.1(a)(16) (West 2018)). Anticipating the State would assert he forfeited this claim by failing to raise it in his postsentencing motion, defendant also argues this supposed deficit in the motion was the result of ineffective assistance of counsel. The State argues the court gave due consideration to such evidence of defendant's mental illness as was in the record. The State is correct.

¶ 14    The State has not taken up defendant's suggestion he forfeited the claim. It thus has waived any argument on that point: the State has the burden of raising and arguing a defendant has procedurally forfeited a claim in the trial court. See, *e.g.*, *People v. Meakens*, 2021 IL App (2d) 180991.

¶ 15    "A trial court's determination regarding the length of a defendant's sentence will not be disturbed unless the trial court abused its discretion or relied on improper factors when imposing a sentence." *People v. Smith*, 318 Ill. App. 3d 64, 74 (2000). "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation which is before it." *People v.*

*Donath*, 357 Ill. App. 3d 57, 72 (2005). "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 16        Defendant was subject to Class X sentencing under the recidivism provision of section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2018)). The applicable sentencing range for the offenses was thus 6 to 30 years' imprisonment (730 ILCS 5/5-4.5-25(a) (West 2018)). Defendant's sentences were within this range—indeed, his 10-year sentences were at the lower end of this range. We thus may not reject the court's judgment unless it was "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. There was no such variance or manifest disproportion here.

¶ 17        Defendant claims the court ignored statutorily mitigating mental health evidence. Other than one paragraph in his presentence investigation report (PSI) discussing a psychiatric follow-up in August 2021, and his improved psychiatric condition despite a refusal to take one of two prescribed psychotropic medications in the three months prior to the report, defendant points to his self-reported improvement in behavior between the March 2019 offense and the November

2021 sentencing as evidence of his prior mental illness. He attributed this improvement to his compliance with treatment. He would have us interpret this information as evidence he was suffering not only from a serious mental illness at the time of the offense, but one which "substantially affected [his] ability to understand the nature of his *** acts or to conform his *** conduct to the requirements of the law" and he asks us to conclude the court improperly ignored this supposed serious mental illness. Our supreme court concluded quite some time ago that a defendant's "prior psychiatric history is an important tool in making a diagnosis as to defendant's mental state at the time of the offense." *People v. Scott*, 148 Ill. 2d 479, 526 (1992). Here, defendant claims error based on minimal references to psychiatric treatment *after* conviction and sentence and suggests the trial court should have extrapolated from that a forensic psychiatric diagnosis regarding his state of mind at the time of the offense. Even an expert would be precluded from testifying about defendant's mental state at the time of the offense if the expert was not present to evaluate defendant at that time or shortly thereafter. *People v. Nepras*, 2020 IL App (2d) 180081, ¶ 23, *People v. Frazier*, 2019 IL App (1st) 172250, ¶¶ 33-35. Defendant's argument fails because the court gave reasonable consideration to the evidence relating to his mental health.

¶ 18        Defendant's PSI tells us he was receiving some mental health care:

> "Records *** [as of September 2021] indicate that the defendant was last scheduled for a psychiatric follow-up exam on 08-19-21. *** During the exam, [defendant] told mental health staff, 'I'm alright.' and 'The meds are helping.' He also claimed that his mood was 'pretty good' and his appetite and mood were 'good.' *** [Defendant] also reported to mental health staff during the exam that nurses were not bringing him his medications; however, notes from nursing staff

indicate that he has refused one of his medications daily for the past 3 months. The exam notes indicated that his psychiatric symptoms have improved. ***

[Defendant] is currently prescribed psychotropic medications which include: Zoloft (200 mg) and Geodon (160 mg)."

¶ 19 This evidence of treatment is an indication defendant had *some* mental health diagnosis. The court gave reasonable weight to this evidence when it noted the PSI suggested defendant was making progress in his mental health but concluded any short-term improvement in his behavior was not entitled to much weight. Indeed, because of the limited evidence, it had no sound basis to give more weight to mental health than it did. Thus, contrary to what defendant argues, the court lacked any reasonable basis to conclude he was, in March 2019, "suffering from a serious mental illness which *** substantially affected his *** ability to understand the nature of his *** acts or to conform his *** conduct to the requirements of the law" (730 ILCS 5/5-5-3.1(a)(16) (West 2018)). As the court gave reasonable consideration to such evidence of defendant's mental illness as was present in the record, we hold the court did not abuse its discretion in imposing the two 10-year sentences.

¶ 20 III. CONCLUSION

¶ 21 For the reasons stated, we affirm the trial court's judgment.

¶ 22 Affirmed.