NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250357-U

NO. 4-25-0357

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Morgan County |
| TRAVIS L. HALEY, | ) | No. 24CF210 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

_____

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, holding (1) defendant failed to show the trial court
erroneously considered unadmitted video as substantive evidence and any error in
admitting the victim's testimony without the admission of the video was not plain
error where defendant failed to demonstrate prejudice; (2) considering all the
admissible evidence in the light most favorable to the prosecution, the evidence
was sufficient to prove defendant guilty of violating an order of protection beyond
a reasonable doubt; (3) remand for further inquiry into defendant's *pro se* claims
of ineffective assistance of trial counsel was unnecessary because the trial court
sufficiently conducted such an inquiry; and (4) the court did not abuse its
discretion in sentencing defendant to five years in prison.

¶ 2     Defendant, Travis L. Haley, was found guilty of the offense of unlawfully

violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2024)). The trial court sentenced

defendant to five years in prison. Defendant appeals, arguing (1) the court erred in considering

video that was not admitted into evidence and testimony based on that video; (2) without the

video and related testimony, the State failed to prove the offense beyond a reasonable doubt;

(3) the court erred by not conducting a preliminary inquiry into defendant's posttrial claims of ineffective assistance of counsel; and (4) the court abused its discretion in imposing an excessive sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by information with the offense of unlawfully violating an order of protection (*id.*) The information alleged defendant committed an act which was prohibited by an order of protection when he went to the residence of the protected party on September 23, 2024. The information also alleged defendant had previously been convicted of the unlawful violation of an order of protection. Defendant waived his right to a jury trial, and the matter proceeded to a bench trial.

¶ 5        At the bench trial, which began in December 2024, Luke Tapscott, a civil process server for the Morgan County Sheriff's Department, testified he personally served an order of protection in Morgan County case No. 23-OP-336 on defendant on January 16, 2024. The order of protection, issued on January 11, 2024, and effective for two years, ordered defendant to stay away from the victim, Christina Rogers, and Rogers's residence.

¶ 6        Rogers testified she had been in a romantic relationship with defendant for about four years. For some of that time, Rogers and defendant lived together. Rogers applied for and was granted an order of protection in January 2024. In September 2024, while reporting an incident involving defendant to the Jacksonville Police Department, Rogers reviewed video from a doorbell camera at her residence and discovered defendant had been on her front porch, rang the doorbell, and knocked on her door around 5:30 a.m. on September 23, 2024. She was home then, but she did not hear defendant knocking at her door. Rogers testified the video clearly and accurately depicted her front porch and what occurred in the early morning hours of September

23. Rogers testified the video showed a man walking up and ringing her doorbell and she was certain the person in the video was defendant. Defense counsel objected to Rogers testifying to what she viewed on the video, stating, "I think that's for a trier of fact, not for the witness to testify to." The State responded that it was a lay witness opinion, allowed by Illinois Rule of Evidence 701 (eff. Jan. 1, 2011). The trial court overruled the objection. At that point, the State argued Rogers had "laid the foundation" for the video and asked the court to publish the video. In response, defense counsel stated he had no objection to the publication of the video but stated, "They haven't moved to admit it yet." The court granted the motion to publish, and the video was played in court. The State rested.

¶ 7          Defendant filed a motion for a directed verdict, which was denied. Defense counsel indicated the defense had no witnesses to present. However, after consulting with defendant, defense counsel asked the trial court for a continuance. Defense counsel stated he had met with defendant several times and did not believe there were any witnesses to present but was going to consult with defendant further regarding defendant's request to call the arresting officer as a witness.

¶ 8          Prior to resuming the bench trial on January 23, 2025, the trial court noted on the record that defendant had written a letter to the court, filed on January 8, 2025, which the court referred to as a *pro se* motion. The motion requested a new attorney because "[defense counsel] is not doing what needs to be done." The court proceeded to question defendant about his allegations. Defendant explained he did not need a new defense attorney; rather, he just wanted his attorney to call the witnesses he had requested. Defendant also complained about the number of continuances in his case. The court informed defendant that he had the right to hire his own attorney, but he did not get to choose which public defender was appointed to his case. It further

explained the continuances had been at defendant's request. Defendant reiterated he wanted defense counsel to call the arresting officer as a witness. Defense counsel informed the court the arresting officer was present in court. Defense counsel also informed the court he had met with defendant several times and asked defendant to write down the names of any potential witnesses. The only witness requested by defendant was the arresting officer. Pursuant to the police report, Officer Foster was the arresting officer. The State agreed to stipulate that Officer Foster would testify he arrested defendant at the probation department on October 1, 2024.

¶ 9        The matter proceeded to closing arguments, where the State argued it had met its burden of proof beyond a reasonable doubt. Rogers testified the video clearly and accurately depicted the front porch of her residence at the time of the offense, and she identified the person in the video as defendant. Defense counsel argued the video was never admitted into evidence. Rogers was in no better position to review the video than the trial court and the video alone, due to its poor quality and lack of complete time and date stamps, was insufficient to convict defendant. Defense counsel further argued, "[I]t's the Court's determination of whether or not that was in fact the Defendant in that video."

¶ 10        The trial court found the State had met its burden and found defendant guilty of the offense of unlawful violation of an order of protection. In making its decision, the court stated:

> "A witness was enough. And I believe a witness is enough in this case. She
> testified credibly to this Court that there was a violation of [an] order of protection
> in place on that date of September 23, 2024, that she observed the Defendant
> violate that order of protection. There was no evidence to contradict that or to
> impeach her testimony. Whether or not the evidence, the actual videotape came

- 4 -

into evidence or not does not affect the Court's ability to listen to that witness and to observe the video in open court."

¶ 11　　　During the preparation of the presentence investigation report (PSI), defendant submitted written statements for the trial court's consideration. The probation officer included those statements in the PSI. Defendant repeated the claims he had made in court: he was unhappy with his defense counsel, he was unhappy with the time it took for the bench trial, and he claimed his requested witness was never called to testify.

¶ 12　　　The trial court sentenced defendant to five years in prison. In determining the sentence, the court considered the PSI; the history, character, and attitude of defendant; the evidence and arguments of counsel; the statement of allocution of defendant; and the victim impact statement. It also considered all the factors in aggravation and mitigation, finding no mitigating factors were applicable. The court determined several aggravating factors, as argued by the State, were applicable. Specifically, defendant's conduct threatened or caused serious harm, defendant had an extensive criminal history, the sentence was necessary to deter others, and defendant was on probation for the same crime against the same victim at the time of the instant offense. The court focused primarily, however, on defendant's failure to take responsibility for his criminal behavior, his lengthy criminal history, and his multiple past failures to comply with the requirements of his probation.

¶ 13　　　The trial court admonished defendant he had the right to appeal. However, although the conviction was entered following a bench trial, the court admonished defendant that prior to taking an appeal, defendant had to first, within 30 days, file a written motion asking to have the judgment vacated and for leave to withdraw his guilty plea.

¶ 14　　　This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16        Defendant argues (1) the trial court erred in considering video not admitted into evidence and testimony based solely on that video; (2) without the video and related testimony, the State failed to prove the offense beyond a reasonable doubt; (3) the court erred by not conducting a preliminary inquiry into defendant's posttrial claims of ineffective assistance of counsel; and (4) the court abused its discretion in imposing an excessive sentence.

¶ 17                           A. Admissibility of Evidence

¶ 18        Admissibility of evidence is generally within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *People v. Colone*, 2024 IL App (1st) 230520, ¶ 56. In this case, defendant acknowledges he failed to file a posttrial motion challenging the alleged evidentiary errors, thus failing to preserve for appeal the claims of improper evidence, but he requests review under both prongs of the plain-error doctrine. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (finding a party must raise an issue at trial and in a written posttrial motion to preserve it for review); see also Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The State responds that no reversible evidentiary errors occurred and, even if they did, we should not excuse defendant's procedural default because the evidence was not closely balanced.

¶ 19        "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). While prejudice is presumed under the second prong, the defendant must prove prejudicial error to prevail under the first prong of a

plain-error analysis. *Id.* at 187. That is, the defendant must show both there was clear error and the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). Under both prongs, the burden of persuasion rests with the defendant. *Id.* at 565. "The initial analytical step under either prong of the plain[-]error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49. Thus, we begin by determining whether there was a clear or obvious error in the consideration of the video or Rogers's testimony based on the video.

¶ 20        Defendant contends the video was never admitted into evidence, so the trial court erred in considering it as substantive evidence. We agree the record reflects the video was never properly admitted as substantive evidence. Defense counsel pointed out more than once during trial that while the State moved to publish the video, it never moved to admit it as substantive evidence. The court acknowledged as much when rendering its decision. We find the court's statements indicate it relied on Rogers's credible and unrebutted testimony in finding defendant guilty of violating the order of protection, not the unadmitted video. See *People v. Naylor*, 229 Ill. 2d 584, 603 (2008) ("[W]hen a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion."). Thus, defendant has not met his burden of showing a clear and obvious error by the court in its consideration of the video.

¶ 21        Defendant contends, though, that the trial court erred in relying on Rogers's testimony regarding the contents of the video. Specifically, defendant argues Rogers's testimony violated the best evidence rule. "The best evidence rule states a preference for the production of the original of documentary evidence when the contents of the documentary evidence are sought

to be proved." *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 610 (1997); see Ill. R. Evid. 1002 (eff. Jan. 1, 2011) ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."). Here, the video was undeniably the best evidence of what occurred on Rogers's front porch in the early morning hours of September 23, 2024, and, if defense counsel had objected on that basis, the objection would have been sustained. See *Tharpe-Williams*, 286 Ill. App. 3d at 611 (noting that if a witness sought to testify as to the contents of a videotape, then the best evidence rule required the videotape to be authenticated and admitted into evidence). Thus, we conclude that allowing Rogers to testify as to the contents of the video, without its admission into evidence, was a clear and obvious error.

¶ 22        Having determined there was error, we next consider whether defendant has shown prejudice. We conclude he has not. The error in this case was not the admission of Rogers's testimony, but, rather, it was the failure to admit the video into evidence. While we are mystified why the State did not move to admit the video as evidence prior to moving to publish it, we do not believe this error affected the fairness of defendant's bench trial. See *People v. Ely*, 2018 IL App (4th) 150906, ¶ 19 ("It is the fairness of the trial, not the perfection of the trial, that the two prongs of plain error aim to protect."). In determining whether evidence was closely balanced for purposes of a plain-error analysis, a reviewing court makes a commonsense assessment of the evidence within the context of the circumstances of the individual case. *People v. Belknap*, 2014 IL 117094, ¶ 52. The trial court was presented with the credible and unrebutted testimony of Rogers. See *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 48 ("No 'credibility contest' exists when one party's version of events is unrefuted, implausible, or corroborated by other evidence."). Rogers's testimony was rationally based on her perception of the video from

her own doorbell camera. She positively identified defendant on the video, and she further identified defendant in court. She had been in a relationship with defendant for several years, which was sufficient evidence to conclude Rogers was more likely to correctly identify defendant than the trier of fact. See *People v. Thompson*, 2016 IL 118667, ¶ 64 (holding the court did not err in admitting the testimony of a witness who saw the defendant on one prior occasion, which was sufficient evidence to provide a basis for concluding the witness was more likely to correctly identify the defendant than the jury); see also Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 23    Further, the video was published to the trial court. Had defense counsel properly objected to Rogers's testimony during trial based on the best evidence rule, the State would have been prompted to move to admit the video as substantive evidence, which would have corrected the error below. See *People v. Taylor*, 2011 IL 110067, ¶ 32 (holding that with an adequate foundation of the process that produced the video evidence, the video evidence may be admitted as evidence at trial without the testimony of a witness who personally witnessed the event); see also Ill. R. Evid. 901 (eff. Sept. 17, 2019) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

¶ 24    Therefore, we conclude any error in allowing Rogers's testimony without the admission of the video was not plain error. Defendant failed to demonstrate the evidence was so closely balanced the error alone threatened to tip the scales of evidence against him. See *Piatkowski*, 225 Ill. 2d at 564-65 (holding that prejudice under first-prong plain error requires a showing that the error alone severely threatened to tip the scales of justice against the defendant). As such, we have no cause to excuse defendant's forfeiture of this issue.

¶ 25                                B. Sufficiency of the Evidence

¶ 26            Defendant contends he was not proven guilty of violating an order of protection

beyond a reasonable doubt because his conviction was based only upon inadmissible evidence.

As concluded above, and argued by the State, defendant forfeited any challenge to Rogers's

testimony based upon the best evidence rule. Thus, Rogers's testimony was properly before the

trial court, and we consider it in addressing defendant's argument that the evidence was

insufficient to sustain his conviction.

¶ 27            When challenging the sufficiency of the evidence, the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

at 566. "We will not substitute our judgment for that of the jury with regard to the credibility of

witnesses, the weight to be given to each witness's testimony, or the reasonable inferences to be

drawn from the evidence." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 101..

¶ 28            To prove a defendant guilty of violating an order of protection, the State must

prove (1) the defendant knowingly committed an act prohibited by a trial court in a valid order of

protection or failed to commit an act ordered by the order of protection and (2) such an act

occurred after the defendant had been served notice of the contents of the order or otherwise

acquired knowledge of the contents of the order. 720 ILCS 5/12-3.4(a) (West 2024); *People v.*

*Soskin*, 2021 IL App (2d) 191017, ¶ 42.

¶ 29            Viewing the evidence in the light most favorable to the State, we find the

evidence was sufficient to prove the elements of the offense of violating an order of protection

beyond a reasonable doubt. Rogers's unrebutted and credible testimony established that

defendant was on the porch of Rogers's residence, ringing her doorbell and knocking, in the

early hours of September 23, 2024. See *People v. Conway*, 2023 IL 127670, ¶ 18 ("[A] single, positive identification by someone who had ample opportunity to observe the offender is sufficient to support a conviction."). The evidence further established, at the time, an order of protection was in effect, requiring defendant to stay away from Rogers and her residence. A rational trier of fact could have found defendant guilty of violating an order of protection beyond a reasonable doubt.

¶ 30                    C. Sufficiency of the Preliminary Inquiry

¶ 31        Defendant contends the matter should be remanded for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), because the trial court failed to conduct an inquiry into his *pro se* posttrial allegations of ineffective assistance of counsel. The State concedes defendant's allegations were sufficient to trigger the court's duty to conduct a preliminary *Krankel* inquiry and further concedes the court's failure to do so requires a remand for a preliminary inquiry. We accept the State's concession that defendant's allegations were sufficient to trigger the court's duty to conduct a preliminary *Krankel* inquiry, but we reject the State's conclusion that the court failed to sufficiently conduct such an inquiry.

¶ 32        When a defendant files a *pro se* posttrial motion asserting ineffective assistance of trial counsel, he is not automatically entitled to the appointment of counsel to pursue those allegations. *People v. Harkey*, 2025 IL App (4th) 230523, ¶ 68. Rather, the defendant's allegations trigger a requirement that the trial court conduct an inquiry into whether there was a factual basis for the defendant's allegations. *Id.*; see *Krankel*, 102 Ill. 2d at 189. "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68,

78 (2003). We review *de novo* the question of whether a trial court conducted an adequate inquiry into a defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Roddis*, 2020 IL 124352, ¶ 33.

¶ 33    What constitutes a sufficient inquiry depends on the circumstances of the case. Generally,

> "[a] reviewing court should consider three factors when determining whether a *Krankel* inquiry was sufficient: (1) whether there was some interchange between the trial court and defense counsel regarding the facts and circumstances surrounding the allegedly ineffective representation, (2) the sufficiency of [the] defendant's *pro se* allegations of ineffective assistance, and (3) the trial court's knowledge of defense counsel's performance at trial and the sufficiency of the defendant's allegations on their face." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 71.

¶ 34    Here, the timing was unusual. After the State rested, defendant filed a motion for a directed verdict, which was denied, and defense counsel indicated he had no witnesses to present. Rather than proceed to argument, the trial court continued the matter for further consultation between defendant and defense counsel. Then, prior to the continuation of defendant's trial, defendant filed a *pro se* motion raising complaints regarding defense counsel's performance at trial. When the matter was reconvened to complete defendant's trial, the court specifically questioned defendant and defense counsel regarding the allegations in defendant's *pro se* motion. After conducting the inquiry, the court proceeded with defendant's trial, wherein defendant was found guilty of the charged crime. Thereafter, defendant raised the same complaints regarding defense counsel in written statements to the probation officer, which were

included in the PSI.

¶ 35        We find the procedure in the instant case was similar to the circumstances in
*People v. Horman*, 2018 IL App (3d) 160423, ¶ 23, to the extent the trial court conducted a
preliminary *Krankel* hearing after the defense rested, but additional evidence was subsequently
admitted at trial. However, we also find *Horman* to be distinguishable in a critical way. In
*Horman*, after the jury found the defendant guilty, the defendant submitted several letters to the
court raising additional allegations of ineffective assistance of counsel. *Id.* The appellate court
rejected the State's argument that the trial court had already addressed the defendant's claims at
the previous *Krankel* hearing, finding there was no indication in the record the court considered
the factual basis of the defendant's letters, which raised new allegations. *Id.* An additional, or
supplemental, *Krankel* inquiry was required to address the defendant's subsequent claims. *Id.*
¶ 26. Here, in contrast, defendant did not raise new allegations of ineffective assistance of
counsel after the initial inquiry into his allegations. Rather, defendant reiterated the same
allegations of ineffective assistance of counsel: defendant was unhappy with his defense counsel,
he was unhappy with the time it took for the bench trial, and he claimed his requested witness
was never called to testify. Those allegations had already been considered, so the primary
purpose of the *Krankel* inquiry had been obtained and a remand would serve no further purpose.
See *People v. Ayres*, 2017 IL 120071, ¶ 20 ("[T]he primary purpose of the preliminary inquiry is
to give the defendant an opportunity to flesh out his claim of ineffective assistance so the court
can determine whether appointment of new counsel is necessary.").

¶ 36        While we hold remand for further preliminary *Krankel* inquiry is unnecessary
under the facts of this case, we feel compelled to address the procedure in this case. We
recognize and appreciate the trial court's attempt to proactively address any future claims of

ineffective assistance of counsel defendant might have raised in a posttrial motion. At the very least, though, the claims should have been revisited posttrial, even if only to note on the record the claims had already been considered and rejected. However, such a procedure invites a piecemeal response to a defendant's posttrial claims. We emphasize the better course of action is for the court to conduct the preliminary inquiry into a defendant's allegations of ineffective assistance of counsel after the posttrial allegations have been made, clearly addressing all the defendant's claims and creating an objective record for the appellate court to review.

¶ 37                                    D. Sentence

¶ 38          Defendant's final contention on appeal is the trial court abused its discretion in sentencing him to five years in prison, arguing the sentence was excessive and disproportionate to the seriousness of the crime. In addition, defendant argues the court failed to consider an applicable mitigating factor. The State contends defendant waived any challenge to his sentence because he failed to file a motion to reconsider his sentence prior to filing an appeal. Absent waiver, the State contends the court appropriately considered the applicable sentencing factors, and defendant's sentence was not an abuse of discretion.

¶ 39          "[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Here, defendant did neither. The State concedes, however, the trial court gave defendant the wrong admonishments and failed to admonish defendant of the necessity of filing a posttrial motion challenging his sentence. See Ill. S. Ct. R. 605(a)(3)(B) (eff. Oct.1, 2001) (stating, where a defendant is found guilty and seeks to challenge his sentence, he must first file a motion in the trial court to reconsider his sentence). As defendant was not properly admonished in accordance with Rule 605(a)(3)(B), in the exercise of this court's discretion and in the interest

of judicial economy, we will address the challenge to his sentence that defendant has raised in this appeal. See *People v. Medina*, 221 Ill. 2d 394, 412 (2006) ("[A]ppellate courts may consider sentencing issues that have not been properly preserved because of inadequate Rule 605(a) admonishments.").

¶ 40 "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court is afforded this deference because it had the opportunity to observe the defendant and the witnesses and " 'to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Id.* at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). Thus, even if the reviewing court would have weighed the sentencing factors differently, it must not substitute its judgment for that of the trial court. *Stacey*, 193 Ill. 2d at 209. "[A]bsent an abuse of discretion by the trial court, the sentence may not be altered on review." *Id.* at 209-10. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 41 The Illinois Constitution requires all sentences "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Defendant was found guilty of violating an order of protection, which was a Class 4 felony because defendant had a prior conviction for violating an order of protection. 720 ILCS 5/12-3.4(a)(1)(i), (d) (West 2024). The applicable sentencing range for a Class 4 felony is one to three years. 730 ILCS 5/5-4.5-45(a) (West 2024). If the defendant is eligible for an extended term Class 4 felony, then the sentencing range is three to six years. *Id.* An extended term may be imposed when a defendant has previously been convicted of

the same or greater class of felony in the past 10 years, excluding time spent in custody. *Id.*
§ 5-5-3.2(b)(1).

¶ 42 Here, defendant had a prior conviction for violating an order of protection. He also had a Class 4 felony conviction in 2018, so he was eligible for an extended term and a maximum sentence of six years in prison. Defendant's sentence of five years was within the statutorily permissible range. "A sentence within the statutory range will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 41.

¶ 43 Defendant contends his sentence was disproportionate and excessive, particularly because the trial court did not consider an applicable mitigating factor. Specifically, defendant contends the statement by the court, "there are no factors in mitigation that apply," was evidence the court did not consider the mitigating factor that "defendant's criminal conduct neither caused nor threatened serious physical harm to another." See 730 ILCS 5/5-5-3.1(a)(1) (West 2024).

¶ 44 After reviewing the transcript of the sentencing hearing in its entirety, we conclude the trial court considered all the statutory factors in mitigation and aggravation but found this mitigating factor did not necessitate a reduction in sentence. See *People v. Markiewicz*, 246 Ill. App. 3d 31, 55 (1993) (holding a sentencing court may not disregard evidence in mitigation, but it may determine the weight attributed to relevant mitigating evidence). The court clearly specified it considered all the factors in aggravation and mitigation. It also considered the PSI; the history, character, and attitude of defendant; the evidence and arguments of counsel; defendant's statement of allocution; and the victim impact statement.

¶ 45 On appeal, defendant attempts to minimize his criminal behavior by arguing he

was convicted for the act of ringing a doorbell. However, the evidence presented at trial demonstrated defendant's actions were part of a pattern of lawbreaking, as evidenced by his extensive criminal history, lack of accountability for the crime, and the fact he committed the instant crime while on probation for committing the same crime against the same victim. Like the trial court, we find this evidence significant, as it speaks to defendant's character and rehabilitative potential, as well as his likelihood for reoffending. While defendant is correct he did not cause Rogers serious physical harm, we cannot conclude the trial court abused its discretion by not affording weight to the mitigating factor that defendant's conduct neither caused nor threatened serious physical harm. Defendant was present on Rogers's front porch, trying to gain access to Rogers, in violation of an order of protection. See 750 ILCS 60/102(1) (West 2024) (stating one of the purposes of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/201 *et seq.* (West 2024)) was to "recognize domestic violence as a serious crime against the individual and society").

¶ 46　　　　Ultimately, the trial court placed significantly more weight on defendant's extensive criminal history and his failure to comply with prior court orders than any mitigating factors. We cannot conclude the court's sentence of five years was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Accordingly, we cannot say the trial court abused its discretion in imposing a sentence within the statutory range.

¶ 47　　　　　　　　　　　　　　III. CONCLUSION

¶ 48　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 49　　　　Affirmed.